UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DOREATHA L. COTTON o/b/o J.T.C.,

                              Plaintiff,

                                                              Case # 19-CV-6542-FPG

v.

                                                                DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

**INTRODUCTION**

Doreatha L. Cotton ("Plaintiff") brings this action on behalf of her minor son J.T.C. ("Claimant") pursuant to Title XVI of the Social Security Act seeking review of the denial of his application for Supplemental Security Income ("SSI"). ECF No. 1. Plaintiff applied with the Social Security Administration ("SSA") for SSI on March 14, 2016, alleging that Claimant was disabled due to anxiety, hyperactivity, insomnia, and allergies. Tr.[1] 13, 76. In June 2018, Plaintiff appeared at a hearing before Administrative Law Judge Brian Kane (the "ALJ"). Tr. 13, 26. On July 2, 2018, the ALJ issued a decision finding that Claimant was not disabled. Tr. 13–26. After the Appeals Council denied Plaintiff's request for review, Tr. 1–3, the SSA's decision became final and Plaintiff appealed to this Court. ECF No. 1. This Court has jurisdiction to review the SSA's final decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 8, 10. For the following reasons, the Commissioner's motion is GRANTED, and Plaintiff's motion is DENIED.

---

[1] "Tr." refers to the administrative record in this matter. ECF Nos. 5, 6.

1

**LEGAL STANDARD**

**I.      District Court Review**

When a district court reviews a final decision of the SSA, it does not "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted).

**II.     Child Disability Standard**

An individual under 18 years old will be considered disabled if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations and that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner must follow a three-step process to evaluate child disability claims. *See* 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. *Id.* § 416.924(a), (b). If so, the child is not disabled. If not, the ALJ proceeds to step two and determines whether the child has an impairment or combination of impairments that is "severe," meaning that it causes "more than minimal functional limitations." *Id.* § 416.924(a), (c). If the child does not have an impairment that is or a combination of impairments that are severe, he or she is not disabled. If the child does, the ALJ continues to step three.

At step three, the ALJ examines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.924(a), (d). If the child's impairment meets or medically or functionally equals the criteria of the Listings, he or she is disabled. To determine whether an impairment or combination of impairments functionally equals the Listings, the ALJ assesses the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must cause "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a). A child has a marked limitation in a domain when his or her impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2). A child has an extreme limitation in a domain when his or her impairment(s) "interferes very seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3).

## DISCUSSION

### I.  The ALJ's Decision

The ALJ analyzed Claimant's benefits application using the process described above. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since the application date. Tr. 16. At step two, the ALJ assessed Claimant with the following severe impairments: attention deficit hyperactivity disorder ("ADHD") and disruptive behavior disorder. *Id.* At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal a Listings impairment. *Id.*

Next, the ALJ found that Claimant's impairments, alone or in combination, did not functionally equal a Listings impairment. *Id.* Specifically, as to the six domains of functioning, the ALJ found that Claimant had a marked limitation in attending and completing tasks; less than marked limitations in acquiring and using information, in interacting and relating with others, in caring for himself, and in health and physical well-being; and no limitation in moving about and manipulating objects. Tr. 16–26. Accordingly, the ALJ determined that Claimant was not disabled. Tr. 26.

## II.     Analysis

Plaintiff argues that the Commissioner's decision should be reversed because the ALJ's finding in the domain of interacting and relating with others is not supported by substantial evidence. ECF No. 8-1 at 12–17. The Court disagrees.

When assessing a claimant's functioning in the domain of interacting and relating with others, the Commissioner must "consider how well [he or she] initiate[s] and sustain[s] emotional connections with others, develop[s] and use[s] the language of [his or her] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others." 20 C.F.R. § 416.926a(i). The SSA provides that school-age children (ranging from six to twelve years' old)[2] "should be able to develop more lasting friendships with children who are [their] age"; "should begin to understand how to work in groups to create projects and solve problems"; "should have an increasing ability to understand another's point of view and to tolerate differences"; and "should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily

---

[2] Claimant fell in this age range for almost all the relevant period. Tr. 26, 74, 76. Claimant was a preschool-age child for purposes of the regulations for less than a month, *id.*; 20 C.F.R. § 416.926a(i)(2)(iii), but because of the very limited time frame in which Claimant fell in that age group, the Court focuses its analysis on the regulations applicable to school-age children.

4

understand." *Id.* § 416.926a(i)(2)(iv). Some examples of limitations a claimant might exhibit in this area include "hav[ing] no close friends," being "overly anxious or fearful of meeting new people," "hav[ing] difficulty playing games or sports with rules," "hav[ing] difficulty communicating with others; e.g., in using verbal and nonverbal skills to express yourself, carrying on a conversation, or in asking others for assistance"; and "hav[ing] difficulty speaking intelligibly or with adequate fluency." *Id.* § 416.926a(i)(3)(ii)-(vi).

Here, the ALJ found that "[C]laimant had less than marked limitation in interacting and relating with others." Tr. 22. The ALJ acknowledged Plaintiff's testimony regarding Claimant's issues on the school bus and his aggressive behavior towards his little sister. Tr. 22, 55–59. The ALJ also discussed reports from Claimant's teachers. Tr. 22. On May 3, 2016, Ms. Wegman reported that Claimant had difficulty interacting with others when not taking his ADHD medication and often got in trouble for becoming physically aggressive with other students. Tr. 199, 201–03, 206. She reported numerous problems in this domain ranging in severity from slight to very serious. Tr. 206. On May 14, 2018, however, Ms. Seltzer only reported that Claimant was "sometimes" overly active with his friends in gym or recess and that he "forgets to keep self-control" but otherwise had no to slight problems in all areas related to this domain. Tr. 236, 239, 243.

The ALJ also noted that Claimant's treatment documentation reflects normal findings on mental status examinations. Tr. 22 (citing multiple treatment notes). The treatment notes reference a cooperative attitude, normal speech, and interpersonal functioning within normal limits. *E.g.*, Tr. 608, 620, 662, 1519. Further, the ALJ discussed the opinions submitted by the state agency medical consultant and Claimant's treating therapist, Carissa Anderson, LMHC. Tr. 22, 732. On May 20, 2016, the state agency medical consultant noted that Claimant "[c]an be argumentative & defiant"

5

and that his teacher reported some aggression. Tr. 79. But the consultant also noted that he showed improvement with medication and opined that Claimant had less than marked limitations in this domain. *Id.* The ALJ gave the consultant's opinion "some weight." Tr. 18. On May 18, 2018, Ms. Anderson noted that Claimant's "impulsivity" impairs his relationships and functioning at home and in school and noted defiant behavior, particularly with respect to Plaintiff, but overall noted only moderate limitations in interacting with others. Tr. 729, 731–32. The ALJ gave Ms. Anderson's opinion "great weight." Tr. 18.

The ALJ also emphasized that Claimant demonstrates "significant improvement" in interacting and relating to others when he is on his medication. Tr. 17–18. This finding is consistent with the record. *See, e.g.*, Tr. 1383, 1386, 1453, 1522, 1531, 1577, 1769–70 (treatment notes indicating that medications help Claimant's condition); *see also* Tr. 1020–21, 1841–42, 1866 (treatment notes reflecting concern that Claimant was not consistently receiving his medications).

The report of Ms. Seltzer, Claimant's normal mental status examinations in this domain[3] and the opinions of the state agency medical consultant and Ms. Anderson[4] provide substantial

---

[3] Plaintiff argues, without support, that the ALJ mischaracterized some of Claimant's mental status exams as "normal" because Claimant's impulse control, concentration, and insight were noted as "fair." ECF No. 8-1 at 14. To the extent these areas are even relevant to Claimant's functioning in this domain, there is no apparent reason to consider a report of "fair" to mean "abnormal." Plaintiff also cites notes reflecting a sad or irritable mood and increased motor activity, but it is unclear how increased motor activity suggests reduced functioning in this domain. *See* 20 C.F.R. § 416.926a(i). Although it seems that a sad or irritable mood might impact your social functioning, *see id.* (requiring the Commissioner to consider "how well [a claimant] initiate[s] and sustain[s] emotional connections with others"), there are many treatment notes reflecting a great, good, or euthymic/normal mood, *see, e.g.*, Tr. 601, 629, 633, 659, 673, 680, 699, 709, 1744, 1798. Overall, the treatment notes appear consistent with the ALJ's findings in this domain, reflecting that Claimant was cooperative, had normal speech, and displayed interpersonal functioning within normal limits. *See, e.g.*, Tr. 608, 620, 662, 1519; *see also* 20 C.F.R. § 416.926a(i) (requiring the Commissioner to consider "how well [a claimant] . . . develop[s] and use[s] the language of [his or her] community[] [and] cooperate[s] with others").

[4] Plaintiff argues that Ms. Anderson's opinion of moderate limitations in this domain conflicts with the ALJ's conclusion. ECF No. 8-1 at 15. It is unclear why Plaintiff believes that Ms. Anderson's opinion supports her argument. Ms. Anderson completed a form with options for "No Limitation," "Moderate Limitation," "Marked Limitation," and "Extreme Limitation." Tr. 731. Her selection of "Moderate

evidence to support the ALJ's finding in this domain. Plaintiff cites several cases that are inapposite. ECF No. 8-1 at 14–17. This is not, however, a case in which the ALJ engaged in a cursory analysis of the record evidence, *e.g.*, *Brown ex rel. J.B. v. Colvin*, No. 12-CV-1062, 2015 WL 1647094, at *7 (W.D.N.Y. Apr. 14, 2015), a case in which the ALJ ignored evidence that directly contradicted his reasoning, *e.g.*, *Henry ex rel. V.E.W. v. Comm'r of Soc. Sec.*, No. 18-CV-552, 2019 WL 3974125, at *4 (W.D.N.Y. Aug. 22, 2019), nor is it a case in which the ALJ's conclusion conflicted with the opinion of a medical source or expert, *Rice ex rel. T.C.K.*, 32 F. Supp. 3d 113, 121–22, 124–25 (N.D.N.Y. 2012).

Plaintiff places great emphasis on Ms. Wegman's report. ECF No. 8-1 at 14. The ALJ does not explicitly discuss Ms. Wegman's report that Claimant had "very serious," "serious," and "obvious" problems in several areas related to this domain. ECF No. 8-1 at 14 (citing Tr. 206). The ALJ, however, generally explained that he discounted Ms. Wegman's report in favor of crediting Ms. Seltzer's report, which reflected significantly less limitations in this domain. Tr. 18, 22, 206, 239. The ALJ is permitted to resolve such evidentiary conflicts. *Webb ex rel. K.S. v. Colvin*, No. 13-CV-737, 2014 WL 2927774, at *4 (N.D.N.Y. June 27, 2014) (holding that ALJ's finding of less than marked limitations in this domain was supported by substantial evidence where one of the claimant's teachers opined that claimant suffered "no problems in th[e] domain" despite other teachers noting "more serious problems in th[e] domain").

Plaintiff also cites to Ms. Anderson's earlier opinion letter dated June 6, 2016. ECF No. 8-1 at 15. In that letter, Ms. Anderson[5] noted that Claimant "struggles with impulsivity,

---

Limitation" in this domain, as opposed to a marked or extreme limitation, *id.*, lends support to the ALJ's conclusion.

[5] Carissa Anderson was apparently known at the time as Carissa Hyde. Tr. 732, 1124. Her later opinion explains that she had been treating Claimant since February 2016, which is consistent with the earlier report and treatment notes. Tr. 729–32, 1124, 1557 (treatment note from August 2017 signed as Carissa Hyde),

7

hyperactivity, and inattention"; his impulsivity can cause safety concerns for others because of his tendency to throw objects, kick, hit, and run away from caregivers; his disruptive behavior leads to difficulty in school, including suspensions; and she recommended that he continue group psychotherapy to improve his social interactions. Tr. 1124. Ms. Anderson, however, explained that Claimant was both "compassionate" and "kind." *Id.*

The ALJ did not specifically discuss Ms. Anderson's earlier opinion. Tr. 16–26. The ALJ, however, was not required to mention every piece of evidence in the nearly 3,000-page record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." (internal quotation marks omitted)); *Sewar v. Berryhill*, No. 17-CV-6211, 2018 WL 3569934, at *2 (W.D.N.Y. July 25, 2018) ("[I]t is not required that the ALJ have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." (internal quotation marks and brackets omitted)). Although the June 2016 opinion clearly notes limitations in this domain, it is not necessarily inconsistent with the ALJ's findings of less than marked limitations and Ms. Anderson's May 2018 opinion of moderate limitations in this area. Tr. 731–32. Plaintiff has had serious disciplinary issues, but those issues "must be weighed against the reports of positive behavior in the record," particularly when Claimant is on his medication. *Hall ex rel. M.M. v. Astrue*, No. 11-CV-6317, 2012 WL 2120613, at *8 (W.D.N.Y. June 11, 2012).

Finally, Plaintiff points to her own testimony regarding Claimant's behavioral challenges. ECF No. 8-1 at 16. The ALJ, however, acknowledged and considered Plaintiff's testimony. Tr. 17–18, 22. Although the ALJ concluded that Claimant has "significant behavioral limitations," he

---

1613 (treatment note from November 2017 edited as Carissa Anderson). *But see, e.g.*, Tr. 1124 (signed Carissa C. Hyde), 1196 (document signed by Carissa Hyde but provider listed as Carissa H. Anderson).

found that those limitations did not result in marked limitations in interacting and relating with others and that Plaintiff's testimony was inconsistent with the evidence showing improvement when Claimant was taking his medications. *Id.* The ALJ was permitted to consider the "effectiveness . . . of any medication." 20 C.F.R. § 416.929(c)(3)(iv); *see also* 20 C.F.R. § 416.926a(a)(3) ("When we assess your functional limitations, we will consider all the relevant factors in § . . . 416.929 including . . . [t]he effects of your medications . . . .").

In short, even if the evidence cited by Plaintiff substantially supports her position that Claimant is disabled, the Court's task here is to decide whether substantial evidence supports the ALJ's decision, not Plaintiff's contrary position. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order). It was up to the ALJ to resolve and weigh conflicting evidence. Plaintiff has identified evidence that conflicts with the ALJ's determination but has failed to show that the ALJ's determination was not supported by substantial evidence. *See, e.g.*, *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (when the court reviews a denial of disability benefits it must "defer to the Commissioner's resolution of conflicting evidence").

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings, ECF No. 10, is GRANTED, Plaintiff's motion for judgment on the pleadings, ECF No. 8, is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 28, 2020
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court